FILED
JEANNE A. NAUGHTON, CLERK
FEB 25 2019
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____ DEPUTY

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re:

ROSALBA CAMPANILE,

Debtor.

Case No. 17-24902 (JNP)

Chapter 13

## MEMORANDUM DECISION DENYING MOTION
## FOR RELIEF FROM STAY

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

Eagle One Federal Credit Union ("Eagle One") filed a motion seeking relief from the automatic stay (the "Motion") to permit it to file a complaint in state court to establish its deficiency claim after a Sheriff sale. The Debtor opposes the Motion. For the reasons discussed below, the Motion will be denied.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G).

### Background

Eagle One held a junior mortgage (the "Lien") on Debtor's property located at 320 Billingsport Road, Paulsboro, New Jersey (the "Property"). The Lien was subordinate to one held by Wells Fargo. The Debtor filed bankruptcy on July 24, 2017 (the "Petition Date"). The Lien was listed on the Debtor's schedules. Dkt. No. 1. The deadline for filing claims was November 22, 2017. Dkt. No. 4. The Debtor's plan (the "Plan") was confirmed on April 5, 2018. Dkt. No. 18. The Plan does not provide for any payments to be made to Eagle One, and states that Eagle One's

claim is unaffected by the Plan. Dkt. No. 3. Eagle One admits that it received notice of the bankruptcy, the claims deadline and the Plan. Nevertheless, Eagle One did not file a proof of claim.

On April 23, 2018, Wells Fargo was granted relief from the automatic stay. Dkt. No. 21. Following this, the Property was sold via Sheriff's sale on June 20, 2018. Dkt. No. 23. The proceeds of the sale were insufficient for Eagle One to recover any funds on account of the Lien. Id. Several months later on November 2, 2017, Eagle One filed a motion to file a claim after the bar date. Dkt. No. 23. This Court issued a decision and related order denying Eagle One's motion to allow a late proof of claim ("Previous Decision"). Dkt. No. 35.[1] Eagle One appealed the Previous Decision (the "Appeal"), which Appeal is pending before the District Court. Dkt. No. 29. Eagle One then filed the Motion, seeking relief from the stay to pursue a deficiency judgment against the Debtor in state court, and then file a proof of claim based upon that judgment. Dkt. No. 32. The Debtor filed opposition (the "Opposition"). Dkt. No. 37. Eagle One then filed a supplemental response ("Supplemental Response"). Dkt. No. 40. While not entirely clear, the Supplemental Response appears to make a different argument, that the foreclosure and sale of the Property by Wells Fargo entitles it to file a late proof of claim. See id. A hearing was held on February 5 (the "Hearing"), at which both parties appeared.

## Discussion

Initially the Court must address whether it has jurisdiction to consider the Motion, given that the Appeal is pending. The Court asked the Parties to address this issue at the Hearing, neither party objected to the Court's jurisdiction, and Eagle One argued that the subject matter of the current Motion differed sufficiently from that of the matter on appeal as to ensure that that the Court had not been divested of jurisdiction. The Court agrees with Eagle One.

---

[1] The Previous Decision was listed as docket number 26 but was redocketed solely for administrative reasons as docket number 35.

2

I.      Divestiture Rule

The general rule, commonly called the divestiture rule, provides that the filing of a notice of appeal immediately divests a trial court of its jurisdiction over those aspects of the case involved in the appeal, and confers jurisdiction on the appellate court. In re 710 Long Ridge Rd. Operating Co., II, LLC, 2014 WL 1648725, at *3 (Bankr. D.N.J. Apr. 24, 2014) (citing Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982); Venen v. Sweet, 758 F.2d 117, 120 (3d Cir.1985)). The function of the divestiture rule is "to prevent interference from the lower court while the appeal is pending and to conserve judicial resources by having only one court at a time review issues." Id. (quoting In re Sacred Heart Hosp. of Norristown, 204 B.R. 132, 143 (E.D. Pa. 1997), aff'd, 133 F.3d 237 (3d Cir. 1998), as amended (Feb. 19, 1998)); see also In re Whispering Pines Estates, Inc., 369 B.R. 752, 759 (B.A.P. 1st Cir. 2007).

While a notice of appeal from a final order generally deprives a lower court of jurisdiction over the subject of appeal, a bankruptcy court retains authority to consider a request while an appeal is pending so long as it is not altering the appealed order. Id. at *4 (citing In re Washington Mut., Inc. 461 B.R. 200, 219 (Bankr. D. Del. 2011), vacated in part, 2012 WL 1563880 (Bankr. D. Del. 2012)). As explained in Whispering Pines, the rationale is that:

> a bankruptcy case typically raises a myriad of issues, many totally unrelated and unconnected with the issues involved in any given appeal. The application of a broad rule that a bankruptcy court may not consider any request filed while an appeal is pending has the potential to severely hamper a bankruptcy court's ability to administer its cases in a timely manner.

Whispering Pines, 369 B.R. at 758. Under the divestiture rule, so long as the lower court is not altering the appealed order, the lower court retains jurisdiction to enforce it. Washington Mut., 461 B.R. at 219 (citing In re Dardashti, 2008 WL 8444787, at *6 (9th Cir. BAP 2008)); see also 710 Long Ridge, 2014 WL 1648725, at *3.

In this case, the Previous Decision dealt with whether Eagle One was able to file a proof

3

of claim after the bar date. The current Motion requests stay relief so that Eagle One may pursue a deficiency judgment in state court. The Court finds these matters sufficiently unrelated that it may decide the current Motion.

## II.     Relief from Stay

Pursuant to section 362(d) of Title 11 of the United States Code (the "Bankruptcy Code"), a party is entitled to relief from the automatic stay upon a showing of "cause." 11 U.S.C. § 362(d)(1). Although "cause" is not defined in the Bankruptcy Code, in order to determine whether "cause" exists, caselaw suggests Courts should apply the three-pronged Rexene balancing test:

> 1. Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;
> 2. Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and
> 3. The probability of the creditor prevailing on the merits.

In re Trump Entm't Resorts, Inc., 526 B.R. 116, 120–21 (Bankr. D. Del. 2015) (quoting Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.), 141 B.R. 574, 576 (Bankr. D. Del. 1992)); see also In re All Am. Properties, Inc., 2010 WL 1541694, at *2 (Bankr. M.D. Pa. Apr. 15, 2010). In this case, the prejudice to the Debtor would be the necessity of defending a state civil court action while attempting to continue with the Chapter 13 case and making all of her required Plan payments. Additionally, the Debtor may be forced to defend against a deficiency action that could result in a claim subject to being discharged. In order to determine Eagle One's hardship if the stay remains in place, the Court must consider the benefit to Eagle One if the Motion were granted. Eagle One states that it "seeks leave from the stay to file a deficiency action against the Debtor . . . so it may attempt to obtain a judgment that would fall within the purview of Bankruptcy Rule 3002(c)(3) and then seek leave to file an unsecured claim in this matter." Dkt. No. 32. So, the only hardship identified by Eagle One by the maintenance of the stay, is that the stay is preventing it from pursuing a prepetition debt against the Debtor in state court which (according to Eagle One)

4

would allow it to file a proof of claim pursuant to Rule 3002(c)(3). However, Eagle One misreads Rule 3002(c)(3) and granting it stay relief will not result in Eagle One being able to file a late claim. Thus, maintaining the stay does not present any hardship to Eagle One. To explain why requires a review of Rule 3002(c)(3).

### A. *Rule 3002(c)*

As noted in the Previous Decision, section 501 of the Bankruptcy Code provides for the filing of proof of a claim by a creditor. 11 U.S.C. § 501(a). Section 502 of the Bankruptcy Code specifies that "[a] proof of claim, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 449 (2007) (quoting 11 U.S.C. § 502). With certain exceptions not applicable here, section 502(b) provides that a claim shall be disallowed where "proof of such claim is not timely filed." 11 U.S.C. § 502(b)(9). These Bankruptcy Code provisions are complemented by Rule 3002(a) which states that "[a]n unsecured creditor . . . must file a proof of claim or interest for the claim or interest to be allowed," with some exceptions that do not apply in this case. Fed. R. Bankr. P. 3002(a). Rule 3002(c) sets the deadline for filing a proof of claim. In a Chapter 13 case the deadline is 90 days after the first date set for the meeting of creditors.[2] Fed. R. Bankr. P. 3002(c). In this case, the first date set for the meeting of creditors was August 24, 2017, the date specified by the Clerk in the Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines. Dkt. No. 4. The court may not allow a proof of claim filed beyond the 90 days unless one of the exceptions set forth in Rule 3002(c) applies. See Fed. R. Bankr. P. 9006(b)(3). "The Court may enlarge the time for taking action under Rules . . . 3002(c) . . . only to the extent and under the conditions stated in those rules." Fed. R. Bankr. P. 9006(b)(3).

---

[2] Rule 3002 was amended in December 2017, after this case was filed. While this decision is based upon the Rule as it existed prior to the amendment, the amendment would not alter the reasoning or result.

5

Of the six exceptions to the deadline listed in Rule 3002(c), the only one relevant here is Rule 3002(c)(3), which states:

> An unsecured claim which arises in favor of an entity <u>or becomes allowable as a result of a judgment</u> may be filed within 30 days after the judgment becomes final <u>if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property</u>. If the judgment imposes a liability which is not satisfied, or a duty which is not performed within such period or such further time as the court may permit, the claim shall not be allowed.

Fed. R. Bankr. P. 3002(c)(3) (emphasis added). This Rule creates an exception, allowing a creditor to file a claim after the 90-day deadline if a judgment is entered against it, which either recovered property from the creditor, or avoided an interest held by the creditor. See id.

### B. *The Deficiency Judgment*

Eagle One argues that it could obtain a deficiency judgment against the Debtor which would permit it to file a late claim under Rule 3002(c)(3) and, therefore, to share in distributions from the Plan. Dkt. No. 32. However, a deficiency judgment in favor of Eagle One would not fall within the purview of Rule 3002(c)(3) and would not permit Eagle One to file an allowable proof of claim. Rule 3002(c)(3) provides an exception to the claim deadline for "[a] claim arising as a result of a trustee's 'avoidance' or 'recovery' judgment." Chapter 7, 12 and 13 Claim Filing Deadlines and Exceptions, <u>Bankr. Proc. Manual</u> § 3002:2 (2018 ed.); <u>see also</u> <u>In re Ketchum</u>, 2013 WL 3479652, at *4 (Bankr. N.D. Ohio 2013) (Rule 3002(c)(3) is applicable to cases in which a lien that has attached to collateral is avoided as impairing an exemption under § 522(f), as a preference under § 547, or under § 544 where the lien is defective); <u>In re Ramsey</u>, 356 B.R. 217, 228 n.50 (Bankr. D. Kan. 2006) (Rule 3002(c)(3) deals with filing and allowance of unsecured claims resulting from avoidance actions); <u>Where the Rubber Meets the Road: Proofs of Claim, Claims Objections and Amendments to Rules 3001, 3002</u>, 120910 ABI-CLE 109 (Claims arising

as a result of a trustee's "avoidance" or "recovery" judgments may be filed within 30 days after the judgment becomes final under Rule 3002(c)(3)). As one court explained:

> A plain reading of the rule reveals that the 30 day limit imposed by Fed. R. Bankr. P. 3002(c)(3) is conditioned upon: (1) an unsecured claim arising in favor of an entity; (2) which becomes allowable because of a judgment; and (3) the judgment must seek from <u>the same entity which holds the unsecured claim</u> the recovery of money or property, i.e. a preference, or deny or avoid that entity's interest in property.

In re Haran, 2013 WL 4625767, at *2 (Bankr. D. Colo. Aug. 14, 2013) (emphasis original). "The 1983 Advisory Committee Note indicates that Rule 3002(c)(3) is intended to permit a creditor originally secured whose security interest is avoided to file an unsecured proof of claim." In re Ong, 469 B.R. 599, 601 (Bankr. W.D. Pa. 2012) (citing Collier on Bankruptcy ¶ 3002.03[4] (16th ed.)).

Eagle One's claim does not "arise" from any deficiency judgment, but instead from the note signed by the Debtor, therefore, its claim existed as of the Petition Date. See Previous Decision at 7; In re Roubert, 336 B.R. 22, 27 (Bankr. D.P.R. 2005). Moreover, the deficiency judgment would not be "a judgment against Eagle One," and it would neither avoid an interest held by Eagle One, nor recover property from Eagle One. In short, a deficiency judgment does not qualify as a "judgment" allowing a late claim under Rule 3002(c)(3).

Further, Eagle One's interpretation of Rule 3002(c)(3) would create a loophole for any creditor, secured or unsecured, which failed to file a timely proof of claim. For example, under Eagle One's theory, a creditor with an unsecured breach of contract claim against a debtor could ignore the deadline for filing proofs of claim in a case, seek stay relief to initiate an action against the debtor for breach of contract, and then return with a judgment entitling it to file a late proof of claim under Rule 3002(c)(3). As noted above, this was not the intent of Rule 3002(c)(3), and it does not fit under either the plain language Rule 3002(c)(3), nor the caselaw applying that Rule.

The result is that Eagle One suffers no harm by the maintenance of the stay because a deficiency judgment would not allow Eagle One to file a claim and receive a distribution in this case. Thus, whether the stay is lifted or remains intact, the outcome is the same. Under the Rexene balancing test, Eagle One has failed to identify any hardship it would suffer by the maintenance of the stay. The hardship the Debtor would suffer from being forced to simultaneously defend a civil action in state court and continue to meet all her obligations in the Chapter 13 outweighs the hardship suffered by Eagle One if the stay is maintained. For this reason, the Motion is denied.

C. *The Foreclosure Judgment and Sale*

As noted above, Eagle One appears to make a separate argument in its Supplemental Response - that the foreclosure judgment and Sheriff's sale (rather than the deficiency judgment it hopes to pursue), is the judgment that qualifies as an exception pursuant to Rule 3002(c)(3) and permits it to file a tardy proof of claim. Dkt. No. 40. Eagle One argues that its interest in the Property was avoided when Wells Fargo foreclosed, and the Property was sold for less than the value of the senior lien. Thus, Eagle One argues, it had a secured claim, and now has an unsecured claim, due to its interest being avoided by the foreclosure judgment and sale. See Dkt. Nos. 32 and 40.

First, to the extent Eagle One is pursuing this argument, the Motion is moot because the judgment and sale have already been entered in state court. Granting or denying stay relief to pursue a deficiency claim will not impact the entry of the foreclosure judgment and sale, so the deficiency judgment Eagle One wishes to pursue is irrelevant to whether Eagle One could file a claim in this case. Beyond this, Eagle One has not had its interest "avoided", as that term is used in Rule 3002(c)(3).

In order to determine whether Eagle One's interest in the Property has been avoided, as that term is used in Rule 3002(c)(3), it is necessary to determine what interest Eagle One held in

8

the Property as of the Petition Date. See 11 U.S.C. §§ 502(b), 506. The Previous Opinion noted that Eagle One did not hold a secured claim on the Petition Date and explained that section 506 of the Bankruptcy Code provides "[a]n allowed claim . . . is a secured claim to the extent of the value of such creditor's interest in . . . such property" and "an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." Bank of Am., N.A. v. Caulkett, 135 S. Ct. 1995, 1997 (2015) (quoting 11 U.S.C. § 506). As the Sixth Circuit explained in In re Lane, "[w]hether a lien claimant is the holder of a 'secured claim' or an 'unsecured claim' depends, thanks to § 506(a), on whether the claimant's security interest has any actual 'value.'" 280 F.3d 663, 669 (6th Cir. 2002). "If a claimant's lien on the debtor's homestead has no value at all, . . . the claimant holds an 'unsecured claim' . . . ." Id. As this Court explained in its Previous Opinion:

> Eagle One did not have a secured claim, because there was no value in the Property to support the Lien and it was "unsecured claim to the extent that [Eagle One's] interest [in the Property]" was $0. 11 U.S.C. § 506. As such, Eagle One had only an unsecured claim, and failed to file a timely proof of claim.

Dkt. No. 35. As such, the foreclosure judgment and sale did not avoid Eagle One's interest in the Property, because Eagle One had no interest in the Property as of the Petition Date.

A helpful analysis was conducted in In re Ketchum, a case in which the debtors objected to a late claim filed by a junior lienholder pursuant to Rule 3002(c)(3). 2013 WL 3479652 (Bankr. N.D. Ohio 2013). In Ketchum, the value of debtors' home was less than the balance due on the first mortgage, and the Chapter 13 debtors' plan stripped the junior creditors lien and proposed to pay it as entirely unsecured. Id. at *1. The Ketchum court confirmed the debtors' plan over the creditor's objections, and the creditor then filed a proof of claim after the bar date, arguing that its secured interest had been avoided by the debtors' strip down plan, and the court's confirmation order avoiding its interest was entered after the deadline to file claims, satisfying Rule 3002(c)(3). Id. at *2. The court upheld the debtors' objection to the claim. In explaining its ruling, the court

9

stated that in confirming the debtors' plan, it had found that the creditor's claim "lacked secured status at commencement of the case such that Debtor's (sic) plan could properly treat it as an unsecured creditor." Id. at *4. Further the court stated that the "unsecured nature of [creditor's] claim thus arises as a result of the value of its collateral and the fact that its interest in that collateral, i.e., Debtors' home, has no economic value." Id. The Ketchum court made a crucial distinction, between the facts before it and cases in which money had been recovered from the creditor under a § 547 preference action, or a lien with value that has been avoided under sections 522(f) or 544. Id. at *5 (citing In re Nowak, 586 F.3d 450, 453 (6th Cir. 2009) (under § 544, Trustee avoided mortgage as invalid due to execution defects, "causing [creditor] to become an unsecured creditor"); In re Int'l Diamond Exch. Jewelers, Inc., 188 B.R. 386, 391 (Bankr. S. D. Ohio 1995) ("The provisions of Bankruptcy Rule 3002(c)(3) govern the filing of all claims arising post-petition as a result of a recovery by the trustee.")). The court explained the distinction stating:

> [L]ienholders in each of those situations hold a secured claim unless and until the lien is avoided. An unsecured claim then arises in such lienholders' favor as a result of the judgment avoiding their lien. (creditor loses its secured status when a trustee avoids a lien under § 544). [Creditor's] claim, on the other hand, is unsecured as a result of its interest in Debtors' home having no value at commencement of the case.

Ketchum, 2013 WL 3479652, at *5. Here, Eagle One did not have a secured claim that was rendered unsecured by an avoidance action, but instead held an unsecured claim on the Petition Date, because the Property had insufficient value to offer Eagle One any economic value on account of the Lien, i.e. the value of the lien was $0, and thus Eagle One's claim was unsecured. Thus, like the debtors' strip off plan in Ketchum, the foreclosure judgment and sale in this case did not avoid a secured interest held by Eagle One, but merely established that Eagle One did not hold a secured interest at all. As such, the foreclosure judgment and sale does not provide Eagle One with the right to file a claim after the claims bar date.

10

Moreover, even assuming that the foreclosure judgment and sale did avoid an interest held by Eagle One, Eagle One has missed the deadline by which it would have been permitted to file a claim under Rule 3002(c)(3). Rule 3002(c)(3) states that a claim arising from such a judgment "may be filed within 30 days after the judgment becomes final." Fed. R. Bankr. P. 3002(c)(3). This is strict requirement. For example, in In re Channakhon, the court rejected the argument that the statute's use of the word "may" indicated a permissive standard ruling that the 30-day time period was the outside limit, and the creditor must comply and file "within" 30 days. 465 B.R. 132, 139 (Bankr. S.D. Ohio 2012) (citing Int'l Diamond Exch. Jewelers, Inc., 188 B.R. at 391 ("Thirty days means thirty days.")). In making its finding, the court relied on Taylor v. Freeland & Kronz, 503 U.S. 638 (1992), a Supreme Court decision construing the language of Bankruptcy Rule 4003(b) (under which parties in interest "may" file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors) to mean that "the validity of a claimed exemption could not be contested after the expiration of the 30 day period." Id.

In this case, the Property was sold at auction on July 20, 2018. Dkt. No. 37. The foreclosure judgment, which Eagle One might argue was a "judgment" avoiding its interest in the Property, was entered prior to that. Id. As such, even if the foreclosure judgment and sale qualified as a "judgment" giving rise to a claim under Rule 3002(c)(3), Eagle One would have been required to file a proof of claim no later than August 20, 2018, which it failed to do. Eagle One did not file its motion to file a late proof of claim until November 2, 2018, more than three months after the sale of the Property. Dkt. Nos. 23 and 37.

In summary, the foreclosure judgment and sale did not avoid an interest held by Eagle One, as that term is used in Rule 3002(c)(3), because Eagle One held no interest in the Property as of the Petition Date. Further, even assuming the foreclosure judgment and sale did avoid an interest held by Eagle One in the Property, Eagle One missed the filing deadline under Rule 3002(c)(3)

11

and would not be permitted to file a late claim under that Rule at this late date. Lastly, the Court is compelled to point out again that under this theory, the Motion would be denied as moot, because the deficiency judgment Eagle One seeks to pursue in state court is irrelevant to the analysis of whether the foreclosure judgment and sale avoided its interest in the Property. For each of these reasons, the Motion is denied.

### D. *Remaining Arguments and Equitable Analysis*

Eagle One asks this Court to grant it relief pursuant to equitable considerations. Eagle One argues that it was misled by the valuation the Debtor placed on the Property in her schedules, indicating that there was sufficient equity for its lien to attach. Dkt. No. 40. Specifically, Eagle One cites the language in section 105 of the Bankruptcy Code "The Court may issue any order . . . necessary or appropriate to carry our the provisions of this title." 11 U.S.C. § 105.

However, as noted in the Previous Opinion, "section 105 cannot be used to contravene section 502(b)(9) and Rules 3002(c) and 9006(b)(3) when the creditor had notice of the bar date in time to comply." Dkt. No. 35 (citing In re Bendezu, 2016 WL 3462040, at *2 (Bankr. D.N.J. 2016)). In a case directly on point, the Second Circuit noted that the court had no power to extend the time merely because creditors were misled as to the value of assets by statements in the schedules and neglected to prove their claims. In re Peck, 168 F. 48 (2d Cir. 1909). Moreover, the Supreme Court has ruled that the statute authorizing bankruptcy court to "carry out" provisions of Bankruptcy Code does not allow court to override explicit mandates of other sections of Bankruptcy Code. Law v. Siegel, 571 U.S. 415 (2014) (citing 11 U.S.C. § 105(a)). The Third Circuit has ruled the same holds true for actions the Rules prohibit. In re Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir.2004) (equitable powers emanating from § 105(a) . . . are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules"). Virtually every other court to consider this has ruled similarly. See In re Barbieri, 199 F.3d

616, 620–21 (2d Cir. 1999), In re Scrivner, 535 F.3d 1258 (10th Cir. 2008); Official Comm. of Equity Sec. Holders v. Mabey, 832 F.2d 299, 302 (4th Cir.1987); In re Sunland, Inc., 536 B.R. 920, 926 (Bankr. D.N.M. 2015) (listing cases).

Finally, the Court notes that equity would prevent Eagle One from using this Motion as a means of circumventing the Previous Decision. See Smith v. Turner, 48 U.S. 283, 328 (1849) (What cannot be done directly cannot be done indirectly, but that the act, which, when done indirectly, is equivalent to its being done directly, must be clearly the same thing as that which is forbidden.); In re Arbogast, 466 B.R. 287, 311 (Bankr. W.D. Pa.), aff'd sub nom. Cardiello v. Arbogast, 479 B.R. 661 (W.D. Pa. 2012), aff'd, 533 F. App'x 150 (3d Cir. 2013) ('[a] person may not do by indirection what he is forbidden to do directly'). In this case, the Court denied Eagle One's motion to file a late claim based on its loan to the Debtor, and Eagle One has stated that the purpose of this Motion is to permit it to file a late claim based on that same loan via different means. "Equitable relief under section 105 also is appropriate to prevent 'end runs' on the bankruptcy process. For example, the 'power to enjoin assures that a creditor may not do indirectly that which he is forbidden to do directly.'" In re Allegheny Int'l, Inc., 118 B.R. 282, 303 (Bankr. W.D. Pa. 1990) (quoting In re Otero Mills, Inc., 21 B.R. 777, 778 (Bankr. D.N.M.), aff'd, 25 B.R. 1018 (D.N.M.1982)). Thus, were the Court to exercise its equitable powers, it would do so to deny this Motion as an attempt to make an end run around the Rules and this Court's Previous Decision.

## Conclusion

For each of the reasons discussed above, the Motion is Denied.

Dated: February 25, 2019

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE